# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 14, 2012

No. 11-10691
Summary Calendar

Lyle W. Cayce
Clerk

JOHN GREGORY REILLY,

Plaintiff - Appellant

v.

TXU BUSINESS SERVICES COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:05-CV-81

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a jury verdict in favor of Defendant-Appellee TXU Business Services Company ("TXU") in a race-discrimination case brought by Plaintiff-Appellant John Reilly ("Reilly") pursuant to 42 U.S.C. § 1981. Reilly argues on appeal that the district court erred by excluding evidence. Finding no reversible error, we AFFIRM.

## I. Facts & Procedural History

This case has already reached this court once, on appeal from a district court summary judgment ruling in favor of TXU. *See Reilly v. TXU Corp.*, 271

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

F. App'x 375 (5th Cir. 2008) (unpublished) (*Reilly I*).  There, we reversed and remanded the district court's summary judgment ruling, and the case proceeded to trial.  The facts on which Reilly initially brought his 42 U.S.C. § 1981 race discrimination claim were set out in relevant part there.  *Id.* at 377-78.  To summarize, Reilly contended that he was passed over for promotion to a new position of Strategic Sourcing Manager ("SSM") in favor of a minority female in order to further TXU's diversity hiring goals.

On the evidence presented there, we held in *Reilly I* that summary judgment in favor of TXU was inappropriate because Reilly presented evidence (TXU's diversity goals and a co-worker's statement that the decisionmaker, Debbie Dennis,  may have had a "diversity issue") that race was a motive in choosing not to promote him.  We thus remanded the case for trial.

### *Applicant Qualification*

The important piece of evidence that precluded summary judgment in TXU's favor in *Reilly I* was put to task at trial.  Just like the testimony recounted in *Reilly I*, Reilly testified at trial that his co-worker told Reilly that despite his good interview, Dennis had a "diversity issue" and that she could not hire a white male for the SSM position.  This co-worker, however, rebutted Reilly's testimony at trial.

An additional piece of evidence was a series of "utilization reports" that showed TXU's tracking of female and minority employment in comparison to regional standards.  These reports break down the total number of employees in a given category, including "Officials and Managers," the category that the SSM position fell under.  Each employment category has four columns outlining various diversity-related employment statistics.  The first includes the total number of employees in a given category.  The second column shows the current TXU work force breakdown of female and minority employees in each category and their percentage representation.  The third column represents TXU's regional benchmarks, showing the reasonable expected participation of

2

minorities and females based on federal contractor regulations. Finally, the last column is a comparative assessment showing whether each TXU employment category is ahead or behind the regional targets.[1]

On the last day of trial, Reilly's counsel attempted to cross-examine Dennis about her use of the Utilization Reports in making the hiring selection. Reilly's theory was that the Reports outline TXU's policy in awarding "points" for diverse applicants: zero points for a white male, one point for a female or minority, and two points for a female minority. Reilly extensively crossed Dennis about this alleged point system and Dennis conceded that if a female minority were hired, she would appear in the Utilization Report "in the head count under both minority and female." Dennis refuted, however, that any "point" system was used, or that there was any incentive to reach mandatory diversity goals. When Reilly questioned Dennis about a white female applicant and whether the Report would reflect her as a "female for purposes of utilization," the trial court interrupted, stating that Reilly had not pled a gender case. Reilly explained:

> REILLY: Your Honor, this is to show that 2 is better than 1.
>
> COURT: I understand your theory. I'm not permitting it.
>
> REILLY: The utilization reports are in, your Honor, and they are. They show—they have got their guidelines and their targets. It is—a jury could conclude that this company had a choice between getting a zero, 1 or 2.
>
> COURT: I'm not permitting it. If you persist in this I'm going to give a special instruction to the jury that they may not consider it.

---

[1] Before Clunis's hire, the relevant category appeared as such:

| | Total # | Female #/% | Minority #/% | Female #/% | Minority #/% | Female # | Minority # |
|---|---|---|---|---|---|---|---|
| Officials & Managers-General | 16 | 2 12.5% | 2 12.5% | 4 25.0% | 2 15% | -2 | 0 |

So you can make your point. You're not permitted to go into gender. It's not a gender case. If you want to make a record, if you want to adjourn and make a record, you may. I'm not permitting it. I understand your theory, Mr. Gillespie. I'm not permitting it.[2]

On June 17, 2011, after five days of trial, the jury found in favor of TXU, concluding that Reilly had not proved by a preponderance of the evidence that TXU had racially discriminated against him in filling the SSM position. The court entered judgment on the jury verdict, and this timely appeal followed.

## II. Standard of Review

We review a trial court's decision to exclude evidence for abuse of discretion. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 387 (5th Cir. 2009). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007). However, we will only reverse if the error below was not harmless, in that it affects a substantial right of a party. *First Nat'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1574 (5th Cir. 1996); *see* FED. R. CIV. P. 61.

## III. Discussion

Reilly asserts that TXU refused to promote him to the SSM position because he is Caucasian, instead giving the position to Clunis, an African American applicant, because of her race. Like Title VII, § 1981 prohibits discrimination in private employment based on race. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976). Section 1981 applies equally to Caucasian plaintiffs in a reverse-discrimination context. *Id.*

### A. Relevance

"Irrelevant evidence is not admissible" at trial. FED. R. EVID. 402. Evidence is relevant if "(a) it has a tendency to make a fact more or less probable

---

[2] The district court correctly ruled that "this is not a gender case" because Reilly failed to file a timely claim of gender discrimination.

than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

The trial court precluded Reilly from cross-examining Dennis about the effect that a particular Caucasian female employee would have on the Utilization Reports because gender discrimination was not an issue at trial. Reilly contends that this exclusion was an abuse of discretion because it precluded him from effectively conveying to the jury evidence of TXU's alleged tripartite "point" system (awarding a "point" for females and double "points" for minority females—like Clunis). We disagree. Reilly was able to fully examine Dennis and others about the alleged discrimination in favor of Clunis and against Reilly. The district court was correct in excluding evidence of Dennis's alleged motive to also favor women because of the danger of jury confusion about whether or not they can consider gender discrimination against Reilly. *See Belton v. Fibreboard Corp.*, 724 F.2d 500, 505 (5th Cir. 1984) (citing *Reichenbach v. Smith*, 528 F.2d 1072, 1074-75 & n.10 (5th Cir. 1976), for the proposition that a district court does not abuse its discretion where it excludes evidence that would tend to confuse the jury); *United States v. Collins*, 690 F.2d 431, 438 (5th Cir. 1982) ("[A] trial court has broad discretion in determining the admissibility of evidence based on relevance . . . and that determination will be overturned only when the abuse of that discretion is clearly shown from the record.").

The only evidence excluded was a tortured examination of Dennis about whether TXU would also get "points" for hiring a Caucasian female employee.[3] This argument is only tenuously related to the claim of racial discrimination and probative mainly of the non-existent claim of gender discrimination. We conclude that the district court did not err.

---

[3] Reilly made no proffer to the court regarding his closing argument that he now contends was hampered by the district court's statements. Having reviewed the argument, we do not agree that Reilly was precluded from making his racial discrimination arguments. At most, he was precluded from making an irrelevant and improper argument about gender discrimination.

### B. Harmless Error

Even if there were error in this exclusion, we must affirm if the error is harmless in that it does not affect Reilly's substantial rights. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004). The party claiming the error bears the burden of demonstrating how its substantial rights were prejudiced. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008) ("[D]istrict court[] error is presumed harmless until shown to be prejudicial."); *Munn v. Algee*, 924 F.2d 568, 573 (5th Cir. 1991).

As discussed, Reilly contends that a reasonable juror could have concluded, based on a full explanation of TXU's Utilization Reports, that TXU's decision not to hire Reilly was based, at least in part, on his race. He avers that the trial court's ruling prejudiced him because without evidence that TXU had more incentive to hire a minority female than a Caucasian female, the jury may have concluded that TXU did not racially discriminate against him (even though it may have discriminated based on gender).

The trial transcript, however, makes clear that Reilly had ample opportunity to convey his theory to the jury. On multiple occasions Reilly was able to explain that TXU would have received two affirmative action "points" for hiring Clunis—one because she is African-American and one because she is female. Indeed, over objection, the court admitted Plaintiff's Exhibit 24, which included the Utilization Reports that list the number, percentage, and comparison points of both females and racial minorities across several job classifications. As Reilly intended, the Reports show that hiring Clunis increased TXU's numbers for both females and minorities.

Reilly also summarized this testimony in a recap argument upon the jury's return from a trial hiatus, stating that before Clunis "got the job there were [sic] a minus 2 in females in the category in question and there was at [sic] zero for the minorities. And then after Ms. Clunis was hired, they had moved up to a minus 1 in females and a plus 1 in minorities on those utilization reports."

Moreover, Dennis admitted that if TXU had hired a different applicant, Durante, a Caucasian female, the Utilization Reports would reflect an increase in the female column.  Dennis also conceded that TXU would not have received any "points" in the Reports if it had hired Reilly, as a white male.  To bring the "point-scale" theory full-circle, Dennis also stated that Clunis would count under both the minority and female category on the Utilization Reports.

The record as a whole demonstrates that Reilly repeatedly emphasized that TXU had motive to discriminate on the basis of race because female minorities received two "points," females received one "point," and white males received none.  Therefore, even if the district court erred in excluding testimony about one Caucasian female applicant's impact on the Utilization Reports, it did not affect his substantial rights because it was cumulative of other testimony. *See, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 512 (5th Cir. 2011); *Sanford v. Johns-Manville Sales Corp.*, 923 F.2d 1142 (5th Cir. 1991) ("The exclusion of cumulative testimony is harmless.").

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment below.