**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2013

No. 11-20639

Lyle W. Cayce
Clerk

MR. ALBERT J. AUTRY, Individually,

Plaintiff - Appellant

v.

FORT BEND INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In 2008, Albert Autry sued the Fort Bend Independent School District ("FBISD"), alleging that the district's decision to hire a Caucasian woman in lieu of promoting Autry amounted to race discrimination in violation of Title VII. The district court granted summary judgment to FBISD and ordered Autry to pay attorneys' fees. We affirm the district court's grant of summary judgment but vacate its fee award.

No. 11-20639

## I.

In July 2008, FBISD hired Michael Johnson as its new director of facilities. Johnson immediately began reorganizing the facilities department. As part of the reorganization, Johnson created a new administrative position entitled "support manager." Johnson drafted a job description, and in October 2008, the human relations department issued a vacancy posting. The posting provided that the new position entailed "a wide range of administrative oversight tasks relating to supervision, monitoring, and quality control of FBISD support." Under the heading "Qualifications," the posting listed "Bachelor's Degree in engineering, business administration, facilities management or related field."

At the prompting of two other facilities department employees, Albert Autry applied for the new position. Autry had joined the FBISD facilities department two years earlier, in 2006. In his capacity as an operations area supervisor, Autry managed the custodial staffs of at least sixteen school buildings. Autry also administered the payroll, investigated accidents, and managed each building's custodial budget and supplies. Prior to starting work at FBISD, Autry spent eleven years as an area manager in the Cypress-Fairbanks Independent School District ("CFISD"). In 2002, while employed by CFISD, Autry earned a bachelors degree in social work from Prairie View A&M University in Texas. Before joining CFISD, Autry served for twenty-two years in the Navy, twice receiving Navy achievement medals for outstanding leadership.

At some point in late October 2008, facilities director Johnson and a committee of FBISD facilities department employees met with Autry to discuss his application for the support manager job opening. However, FBISD ultimately awarded the new position to Jo Ann Baker. Baker is Caucasian and has no formal education beyond the high-school level. At the time FBISD offered

2

No. 11-20639

Baker the job, she apparently had no prior connection to the district, having worked for eleven years as an escrow coordinator for a title insurance company. The record does not reflect what Ms. Baker's prior work as an escrow coordinator entailed.

On November 10, 2008, Autry lodged a complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting that FBISD's decision to offer the new support manager position to a less-qualified Caucasian woman was racial. On October 18, 2010, the EEOC issued Autry a right-to-sue letter, and on January 13, 2011, Autry initiated the instant litigation in the Southern District of Texas. In his complaint, Autry claimed that FBISD denied him the promotion because of his sex and race in violation of Title VII, also asserting an age-discrimination claim under the Age Discrimination in Employment Act.

On April 11, 2011, the district court entered an order dismissing Autry's age- and sex-discrimination claims. Thereafter, FBISD moved for summary judgment on Autry's race-discrimination claim. At a hearing held on July 13, 2011, the district court orally ruled that Autry would "take nothing" and invited the school district to move for attorneys' fees pursuant to § 706(k) of Title VII. FBISD took the court's invitation, and on August 8, 2011, the court issued a final order granting FBISD's motion for summary judgment and awarding the school district $24,380.50 in attorneys' fees. By separate opinion, the district court explained its fee award, reasoning that Autry's claims were "frivolous, unreasonable, and groundless." Autry appeals both the summary judgment ruling and the award of attorneys' fees.[1]

---

[1] FBISD insists that Autry has waived his right to appeal the fee award by failing to raise the issue in his brief. We disagree. Autry's arguments for reversing the district court's award of summary judgment are, *a fortiori*, arguments that his discrimination claim was not frivolous. Moreover, Autry expressly states in his brief that the "[a]ward of attorney's fees was not warranted on the facts."

3

No. 11-20639

## II.

We begin by reviewing *de novo* the district court's award of summary judgment to FBISD, applying the familiar *McDonnell-Douglas* burden-shifting framework that governs Title VII race-discrimination claims. Under that framework, a plaintiff challenging a failure to promote must first establish a prima facie case, demonstrating that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.[2] If the plaintiff meets this obligation, he raises an inference of unlawful discrimination, which shifts the burden of production to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting the plaintiff.[3] If the defendant satisfies this burden, the onus shifts back to the plaintiff to prove either that the defendant's articulated reason is merely a pretext for race discrimination (the pretext alternative), or that the defendant's reason, while true, is only one of the reasons for its decision, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motives alternative).[4]

FBISD concedes that Autry has established a prima facie race-discrimination case but asserts that it hired Baker through a nondiscriminatory, merit-based selection process. In support of its claim, FBISD submitted affidavits and documentation that establish the following facts: In October 2008, facilities director Johnson and a facilities department employee screened fifteen applications for the support manager position, meeting with each applicant and

---

[2] *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).

[3] *Id.*

[4] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

ultimately selecting Autry, Baker and two other individuals as finalists. Thereafter, Johnson convened a committee including himself and six facilities department employees — two of whom were African American — to interview the four finalists. After the interviews, the seven-member committee met to discuss the candidates and their respective qualifications and interview performances. Approximately one week after the interviews, Johnson created a chart on which he set forth each committee member's rank ordering of the four finalists, from one (most preferred) to four (least preferred). Johnson based the committee members' rank orderings on his understanding of their preferences. He then approached each of the committee members, asking them to acknowledge their rank ordering on the chart. As Baker had the lowest point total, Johnson awarded the new position to her.

Because FBISD has met its burden to proffer a legitimate, non-discriminatory reason for hiring Baker in lieu of promoting Autry,[5] this case hinges on whether Autry has made the evidentiary showing to carry his burden at stage three of the *McDonnell-Douglas* inquiry. Autry argues that FBISD's proffered reason is pretextual, urging that he was more qualified for the support manager position than Baker. In the Title VII failure-to-promote context, we have found pretext on a showing that the unsuccessful employee was "clearly better qualified" than the successful candidate.[6] Here, though Autry's qualifications are sterling, Autry failed to introduce any evidence shedding light on Baker's credentials or work experience. Indeed, in his deposition, Autry conceded that he had never met Baker, did not know how Baker had performed in her interview, had no idea what Baker's former job as an escrow officer

---

[5] *Price*, 283 F.3d at 720 ("The defendant's burden during th[e] second step is satisfied by producing evidence, which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.").

[6] *Id.* at 723.

entailed, and had never seen Baker's résumé. While Autry points out that Baker did not satisfy the job posting's degree qualification, Autry's bachelors degree in social work *also* failed to satisfy that requirement.[7] Moreover, FBISD introduced an affidavit from the human relations employee who posted the support manager job opening, who verified that he erroneously failed to indicate that degree-equivalent work experience was to be an acceptable alternative.[8] Ultimately, the record gives a trier of fact no reasonable basis upon which to compare Autry and Baker's respective qualifications for the support manager position, and Autry's first theory of pretext must therefore fail at the summary judgment stage.

Autry also argues that FBISD's purportedly meritocratic, committee-based selection process was a sham, urging that the process was inconsistent with the district's established procedures and suggesting that facilities director Johnson held absolute control over the ultimate hiring decision. A Title VII plaintiff can establish pretext by presenting evidence that his employer's proffered explanation for an adverse employment decision is "false or unworthy of credence."[9] In this case, Autry's allegations of procedural irregularities are unsubstantiated in the record,[10] and would not be conclusive of pretext even if

---

[7] FBISD's job posting noted that support manager position requires a "Bachelor's Degree in *engineering, business administration, facilities management or related field*." (emphasis added.)

[8] FBISD also introduced a job posting for a similar facilities management position, published on the same date as the support manager opening, that correctly contains the equivalency option.

[9] *Vaughn*, 665 F.3d at 637.

[10] For example, Autry reasons that facilities director Johnson could not have properly interviewed all fifteen applicants in a single day, as supposedly sworn in Johnson's affidavit. But Johnson's affidavit does not state that he interviewed all fifteen candidates on the same day. Similarly, Autry complains that the facilities employee who assisted Johnson with the screening process was not qualified to serve on the screening panel. But Autry points to no record support for this naked allegation, and we could find none.

accepted as true.[11] Nor does the summary judgment record contain any evidence to contradict FBISD's affidavits and documentation, which establish that Johnson offered Baker the support manager position because the facilities department hiring committee had determined that she was the most qualified finalist for the position.[12] Sheer speculation aside, the record gives a reasonable juror no reason to doubt FBISD's version of events.

Autry's only other evidence that race played a role in FBISD's hiring decision comes from certain comments allegedly made by facilities director Johnson at and around the time of Autry's October 2008 interview. We have held that comments may be circumstantial evidence of discrimination if they reflect discriminatory animus and are uttered by a person who wields influence over the challenged employment action.[13] In the present case, Autry testified that during his interview, Johnson noted that President Obama "will ruin the damn country if he gets elected." Johnson submitted an affidavit in which he denies making the comment. But even assuming Autry's deposition testimony is accurate, Autry himself admitted that Johnson's comment was political, not racial, in nature.

---

[11] *See E.E.O.C. v. Texas Instruments, Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996).

[12] The EEOC issued a letter of determination finding that Johnson had made the ultimate decision to hire Baker and concluding that FBISD had "violated Title VII by hiring a Caucasian applicant who did not meet the minimum qualifications for the vacancy announcement." Autry does not reference the contents of the letter in his brief, nor was it part of the record before the district court when it orally ruled on FBISD's motion for summary judgment. Even if Autry had properly introduced the letter into the summary judgment record, the letter would be insufficient to create a fact issue for trial, as it is relies on hearsay and is plainly contradicted by the competent summary judgment evidence. *E.g.*, *Cruz v. Aramark Services, Inc.*, 213 Fed. Appx. 329 (5th Cir. 2007); *Wright v. Columbia Women & Children's Hosp.*, 34 Fed. App'x. 151 (5th Cir. 2002).

[13] *Reed v. Neopost USA, Inc.*, — F.3d —, 2012 WL 5476909 at *3 (5th Cir. 2012) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir.2000)).

No. 11-20639

Autry also testified that shortly after his October 2008 job interview, Mario Carrera — one of the committee members present at the interview — told Autry that Johnson had said that "[i]f President Obama's elected, they're going to have to take the Statute of Liberty and put a piece of fried chicken in his [sic] hand." While FBISD challenged the statement as rank hearsay, the district judge rejected it as political, observing that "no black individually and no blacks collectively owns [sic] the sensitivity rights to fried chicken or anything else." The district judge's comment misses the mark, as it overlooks the racial component of Johnson's alleged statement.[14]   However, we must agree with FBISD (and the district court's implicit ruling) that Autry's deposition testimony was without force in the face of a motion for summary judgment.

After searching the record and liberally construing Autry's arguments on appeal, we find no competent evidence from which a reasonable juror could infer that FBISD's decision to hire Baker in lieu of promoting Autry was motivated by impermissible racial considerations.

**III.**

We next assess whether the district court abused its discretion in awarding FBISD attorneys' fees under § 706(k) of Title VII.[15]   As Congress enacted § 706(k) in part to "promote the vigorous enforcement of the provisions of Title VII," the Supreme Court has held that a successful defendant can only recover §706(k) fees if "the plaintiff's action was frivolous, unreasonable, or

---

[14] *Cf. Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (holding that the term "boy" may be evidence of racial animus, depending on the context in which it is used). When Autry's lawyer tentatively suggested that Johnson's alleged reference to fried chicken was "a long-standing racial slur," the district judge rejoined that "[t]hat's really surprising to Colonel Sanders."

[15] *Cf. Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 208 (5th Cir.1998) ("We review an award of attorneys' fees for abuse of discretion.").

without foundation."[16]  The Court has cautioned district judges to "resist the understandable temptation to . . . conclud[e] that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[17]  In this case, Autry's deposition testimony is forthright, and though his submissions ultimately prove inadequate to withstand a motion for summary judgment, we cannot agree that his Title VII discrimination claim was "frivolous, unreasonable or without foundation."[18] The district court's fee award constitutes an abuse of discretion.

## IV.

The summary judgment award to FBISD is AFFIRMED.  The award of attorneys' fees to FBISD is VACATED.

---

[16] *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978).

[17] *Id.*

[18] *Id.* at 421.  Though the EEOC's letter of determination in this case may not have been in the summary judgment record, it was before the district court on FBISD's motion for attorneys' fees, providing further evidence that Autry's prosecution of his claim was not baseless.