**Jerry Scott GREGORY, Plaintiff–Appellant,**

v.

**TOWN OF VERONA, MISSISSIPPI, Defendant–Appellee.**

No. 13–60850
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 7, 2014.

Jim D. Waide, III, Esq., Ronnie Lee Woodruff, Esq., Waide & Associates, P.A., Tupelo, MS, for Plaintiff–Appellant.

Gary Erwin Friedman, Esq., Phelps Dunbar, L.L.P., Jackson, MS, Krissy C. Nobile, Esq., Phelps Dunbar, L.L.P., Tupelo, MS, for Defendant–Appellee.

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM: *

Jerry Scott Gregory filed this employment discrimination case alleging that the Town of Verona, Mississippi failed to promote him to Fire Chief because of his race. The district court granted summary judgment in favor of Verona, concluding that Gregory had failed to produce sufficient evidence that Verona's legitimate reasons for promoting another applicant were pretextual. We affirm.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I

Gregory, who is Caucasian, began working part-time as a firefighter in Verona in September 2009. He applied for the firefighter position based on the recommendation of his friend, Mac McCoy, who was already working as a firefighter for Verona. McCoy is African–American. In 2010, the Fire Chief voluntary left his position and the Verona Board of Alderman (the Board) voted to make Gregory the temporary Interim Fire Chief. Verona then advertised the position of Fire Chief in the town newspaper and received applications from a number of candidates.

The Board elected to interview only two candidates for the position, Gregory and McCoy, as they were the only two applicants who were currently employed by the Verona fire department. Following the interviews the members of the Board voted 3–1 to hire McCoy as Fire Chief with one alderman abstaining. Specifically, three African–American aldermen voted for McCoy, one African–American alderman voted for Gregory, and the single Caucasian alderman abstained.

The three board members who voted against Gregory provided varying reasons as to why they regarded McCoy as the better qualified candidate. They all generally agreed that McCoy was more impressive than Gregory in their respective interviews, that McCoy had better leadership skills, and that he was overall a better candidate. McCoy also had more experience working for Verona than did Gregory. Gregory alleges that after the vote the Caucasian alderman, Julian Riley, told Gregory that he "felt that they had chosen [McCoy] because he was black." [1] But in

---

1. In his brief, Gregory attributes this alleged quote to Mayor Williams but in the deposition he clearly attributes it to Alderman Riley, not the Mayor.

his deposition, Alderman Riley denied making this statement and testified that he never discussed the hiring of McCoy with Gregory.

Gregory filed two discrimination claims against the town of Verona. First, he alleged that Verona racially discriminated against him by failing to promote him to Fire Chief. The district court granted summary judgment on this claim, holding that he had failed to adduce sufficient evidence to create a fact issue on whether Verona's stated rationale for hiring McCoy was pretextual.

Second, Gregory alleged that Verona wrongfully terminated him on the basis of his race. Following McCoy's selection as Fire Chief, Gregory left the Verona fire department. The reasons for his departure were disputed in the district court. Gregory contended that he was fired as a firefighter after the vote, but Verona asserted that he removed all of his belongings from his locker and resigned on his own accord. The district court granted summary judgment on this claim as well, holding that Gregory had not demonstrated that he was, in fact, terminated. Gregory only appeals the district court's judgment dismissing his failure-to-promote claim.

## II

We review a district court's grant of summary judgment de novo. Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [2] We review all facts in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor.[3] A genuine dispute of material fact exists when the evidence would permit a reasonable jury to return a verdict in favor of the non-movant.[4]

In employment discrimination cases, once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the disputed action.[5] We refer to this approach as the *McDonnell Douglas* framework.[6] If the defendant provides a legitimate, non-discriminatory justification then the burden shifts back to the plaintiff who can attempt to demonstrate that the defendant's proffered reason is not legitimate but simply a pretext for discrimination.[7] To successfully make this demonstration the plaintiff must put forward sufficient evidence to rebut each of the non-discriminatory reasons the employer has articulated.[8] Pretext can be established by showing a discriminatory motive more likely motivated an employer's decision such as through evidence of disparate treatment or that the employer's articulated explanation is not credible.[9]

## III

A plaintiff challenging a failure to promote must first establish a prima facie

2. Fed.R.Civ.P. 56(a).

3. *Ramsey v. Henderson,* 286 F.3d 264, 267 (5th Cir.2002).

4. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

5. *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 881 (5th Cir.2003).

6. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

7. *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.,* 719 F.3d 356, 363 (5th Cir.2013) (citing *Manning,* 332 F.3d at 881).

8. *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir.2001).

9. *Haire,* 719 F.3d at 363.

case, demonstrating that (1) he was not promoted; (2) he was qualified for the position he sought; (3) he fell within a protected class at the time of the failure to promote; and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race.[10] Verona concedes that Gregory can establish a prima facie case of race discrimination.

As Verona has conceded that Gregory can establish a prima facie case, the burden shifts to Verona to proffer legitimate, non-discriminatory reasons for the hiring. Verona has provided those reasons. The various aldermen who voted to hire McCoy over Gregory provided a number of rationales for their decision. The consistent theme is that though the two candidates possessed a similar level of credentials and experience, the aldermen believed that McCoy was more qualified and possessed better leadership skills. Gregory objects that Verona's reliance on such "subjective criteria" automatically establishes a fact issue, making summary judgment inappropriate. This is a misreading of our case law.

Gregory relies on *Oden v. Oktibbeha County, Mississippi*[11] for the proposition that an employer's legitimate, non-discriminatory justifications for a hiring decision may not be "subjective." In *Oden*, an African–American deputy sheriff sued, alleging racial discrimination, after being passed over for a promotion.[12] The case

was tried to a jury, and the jury returned a verdict in favor of the plaintiff.[13] The defendants appealed the denial of their motion for a judgment notwithstanding a verdict.[14] The defendants alleged that the plaintiff could not establish a prima facie case of race discrimination because he was not qualified for the promotion on the basis of certain subjective hiring criteria.[15] We rejected this argument, holding that a plaintiff need only demonstrate that he met "objective promotion criteria at the prima facie stage of his case." [16]

Gregory's reliance on *Oden* is misplaced. *Oden* dealt with a situation where the defendants were challenging the plaintiff's qualifications for the job as part of his prima facie case. Here, Verona conceded that Gregory satisfied his prima face case. Verona does not challenge Gregory's qualifications. Rather, the aldermen who voted for McCoy asserted that Gregory did not interview well and did not display the same leadership ability as McCoy. These are legitimate, non-discriminatory reasons to prefer one candidate over another. We have previously held that an employer's bare assertion that it chose the "best qualified" candidate meets the employer's burden on this step of the *McDonnell Douglas* framework.[17] We have also held that a hiring process akin to the one in this case, where a committee votes on the candidates after conducting interviews, meets the burden of having used a non-discriminatory, merit-based selection process.[18] "The de-

**10.** *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346–47 (5th Cir.2013).

**11.** 246 F.3d 458 (5th Cir.2001).

**12.** *Oden*, 246 F.3d at 461–62.

**13.** *Id.* at 462.

**14.** *Id.* at 467.

**15.** *Id.* at 469.

**16.** *Id.* (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir.2001)).

**17.** *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881–82 (5th Cir.2003).

**18.** *See Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir.2013).

fendant's burden during this second step is satisfied by producing evidence, which, *'taken as true,* would *permit* the conclusion that there was a non-discriminatory reason for the adverse action.' " [19] Verona has met this burden.

■ As Verona satisfied its burden at the second step of the *McDonnell Douglas* analysis, the burden shifts back to Gregory to demonstrate pretext. Again, Gregory asserts that the stated hiring rationale was subjective. "The mere fact that an employer uses subjective criteria is not, however, sufficient evidence of pretext." [20] Gregory propounds two additional arguments. First, he alleges that the sole Caucasian alderman, Julian Riley, confided in him after the vote that Riley "felt that they had chosen [McCoy] because he was black." "We have held that comments may be circumstantial evidence of discrimination if they reflect discriminatory animus and are uttered by a person who wields influence over the challenged employment action." [21] Alderman Riley denies making this statement, and Verona challenges that the statement is inadmissible hearsay. But even assuming that the deposition testimony is accurate and that it is admissible under Federal Rule of Evidence 801(d)(2), this is not enough to establish pretext. The alleged statement is attributed to Alderman Riley, who abstained from the voting. No allegedly ra-

cially discriminatory remarks were alleged to have been made by any of the three aldermen who actually voted for McCoy. Further, the statement only indicates that Riley "felt" that McCoy's race had been a factor in the hiring. This is not competent evidence that race actually was a motivating factor in the hiring decision. That one non-voting member of the hiring committee allegedly "felt" that race may have been a factor is insufficient to create a fact issue. Mere "opinions, with *no* supporting evidence" that a promotion decision was based on race are insufficient to support a claim of discrimination. [22]

Second, Gregory contends that Verona's failure to promote him despite his allegedly superior qualifications is evidence of pretext. "[A] showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual." [23] "[T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person … could have chosen the candidate selected over the plaintiff for the job in question.' " [24] Gregory cannot meet this high bar. Even if we set aside the allegedly subjective qualification of a superior interview, the relevant "objective" metrics are "roughly comparable." The

---

19. *Price v. Fed. Express Corp.,* 283 F.3d 715, 720 (5th Cir.2002) (emphasis in original).

20. *Manning,* 332 F.3d at 882.

21. *Autry,* 704 F.3d at 348–49 (citing *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 441 (5th Cir.2012)).

22. *Jenkins v. Methodist Hosps. of Dall., Inc.,* 478 F.3d 255, 262 (5th Cir.2007); *see also Johnson v. Spohn,* 334 Fed.Appx. 673, 687 (5th Cir.2009) (stating that observations by colleagues that the plaintiff was "probably"

treated more severely because of his race were insufficient to support claim of discrimination); *Jatoi v. Hurst–Euless–Bedford Hosp. Auth.,* 807 F.2d 1214, 1219–20 (5th Cir.1987) (holding that statements from other physicians that guessed that the plaintiff had been discharged because of his East Indian heritage were not sufficient to establish discrimination).

23. *Price,* 283 F.3d at 723.

24. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 357 (5th Cir.2001).

two applicants had comparable levels of certification and comparable levels of experience as a firefighter. Gregory conceded in his complaint that McCoy was "an experienced and good firefighter." "Showing that two candidates are similarly qualified does not establish pretext...."[25] As the district court held, "the court has little difficulty in concluding that [Gregory] has failed to establish fact issues regarding whether he was 'clearly better qualified' than the admittedly well-qualified McCoy."

In sum, Gregory has not adduced sufficient evidence to "permit a reasonable trier of fact to find that the proffered reason [for the promotion of McCoy] is a pretext."[26]

\* \* \*

AFFIRMED.

**25.** *Price*, 283 F.3d at 723 (citing *Odom v. Frank*, 3 F.3d 839, 846 (5th Cir.1993)).

**26.** *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir.2001).